AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The Residence Located At:<br>420 North Pitt Street<br>Mercer, Pennsylvania 16137 | )<br>)<br>)<br>)<br>)<br>) | Case No.  *12-92 m*<br><br>**[UNDER SEAL]** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
the residence located at 420 North Pitt Street, Mercer, Pennsylvania 16137, further described as a "row house", red brick, two-story construction with a front porch with an overhead porch roof, a photograph is attached as Attachment A,

located in the _____ Western _____ District of _____ Pennsylvania _____ , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code,<br>Sections 2251 and 2252 | Production, Distribution, and Possession of Material Depicting the Sexual<br>Exploitation of a Minor |

The application is based on these facts:


☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
   under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thomas N. Carter, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2/14/12__

_____
*Judge's signature*

City and state:  Pittsburgh, Pennsylvania

Cynthia Eddy, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED



## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

1.  Correspondence, including email correspondence, which pertains to children, to include, but not be limited to, photographs and videos transmitted to or by Armando CRUZ, Brandon Schroth, and/or Michael Applying, which depict children clothed and/or unclothed;

2.  Internet browsing history related to sex chat rooms;

3.  Any computer, computer system and related peripherals (in open view or secreted); commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, thumb drives, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals, designed to view or receive visual depictions of minors engaging in sexually explicit conduct;

4.  Still and video cameras (digital and non-digital), electronic storage devices for still and video cameras, and memory cards;

5.  Cellular telephones, and text messages which pertain to children generally and Child 1, Child 2, and Child 3 specifically. Text messages to and/or from Brandon Schroth and/or Michael Applying;

6.  Envelopes, letters, notes, videos, photographs of minors, to include photographs of Child 1, Child 2, and Child 3, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

7.  Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades,

purchases, or transactions of any kind involving the transmission through interstate or foreign commerce, including by United States mail or by computer, of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

8.   Records evidencing occupancy of the residence located at 420 North Pitt Street, Mercer, Pennsylvania 16137, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence;

9.   Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes;

10.  Any type of medications, in pill, powder, or liquid form, that can be used to disorient, hinder, or impede the memory or consciousness of a person, including, but not limited to, Flunitrazepam, commonly called "Roofe" or "date rape drug", and/or GHB, and/or Ketamine; and

11.  Any and all vibrators or other sexual toys, to include one that is pink in color.

All of which are fruits, instrumentalities, and evidence of the commission of violations of Title 18, United States Code, Sections 2251(a), 2251(e), 2252(a)(2), and 2252(a)(4)(B).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF:      )
                                     )
THE RESIDENCE LOCATED AT:            )      Magistrate No. *12-92M*
420 NORTH PITT STREET                )      **[UNDER SEAL]**
MERCER, PENNSYLVANIA 16137           )

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Thomas N. Carter, being duly sworn, do hereby depose and state:

### INTRODUCTION

1.   I am a Special Agent with the Federal Bureau of Investigation (FBI).  I have been so employed for approximately 20 years, during which time I have had many investigative duties.  As part of my duties, I investigate criminal violations relating to high technology crime, cyber crime, child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of materials depicting the sexual exploitation of children.  I have received training in the area of child pornography and child exploitation investigations, and have had the opportunity to observe and review numerous examples of such materials in a variety of media, including computer media.  I have participated in the execution of numerous search warrants which involved child exploitation and/or child pornography offenses.

2.   Through my experience and training, I am aware that Title 18, United States Code, Section 2256 defines "minor" for purposes of Sections 2251 and 2252, as "any person under the age of eighteen years." Section 2256 also defines "sexually explicit conduct" for purposes of these sections as including:

a.   genital-genital, oral-genital, anal-genital, and oral-anal sexual intercourse, whether between persons of the same or opposite sex;

b.   bestiality;

c.   masturbation;

d.   sadistic or masochistic; or

e.   lascivious exhibition of the genitals or pubic area of any person.

3.   I am investigating the activities of Armando CRUZ, who resides at 420 North Pitt Street, Mercer, Pennsylvania 16137.  As will be detailed below, there is probable cause to believe that Armando CRUZ is engaging in the production, distribution and storage of photographs and images which depict the sexual exploitation of children at the above-mentioned residence, in violation of Title 18, United States Code, Sections 2251 and 2252. The residence is described as a "row house", red brick, two-story construction. The residence has a front porch with an overhead porch roof.  A copy of a photograph depicting the residence is

2

attached hereto as "Attachment A", and made a part hereof.

4. This Affidavit is submitted in support of my application for a warrant authorizing me to search and seize evidence, fruits, and instrumentalities of the foregoing criminal violations. I request authority to search the entire premises, including the residential dwelling and any computer, computer media, and camera located therein, where the items specified in Attachment B to this Affidavit may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

5. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Section 2251 and 2252, are presently located at 420 North Pitt Street, Mercer, Pennsylvania 16137.

## BACKGROUND OF THE INVESTIGATION

6. In December 2011, agents of the Federal Bureau of Investigation (FBI) in San Diego, California, notified the FBI in Pittsburgh, Pennsylvania, of investigative information obtained which pertains to an individual identified as Armando CRUZ. FBI San Diego reported that CRUZ was inviting young girls under the age of

3

12 to his Mercer, Pennsylvania residence, and then taking photographs of the young girls in various states of dress and undress.  Agents in San Diego articulated that they had acquired some such photographs of young prepubescent girls. The San Diego FBI forwarded a DVD disk to Pittsburgh FBI which contained several hundred such photographs of three prepubescent girls inside a residence.  At least five (5) of the photographs depicted two of the girls with their breasts being exposed by an adult male hand, while one of the girls appeared to be sleeping.  Also depicted in the photographs, were two adult males, identified by FBI San Diego as Armando CRUZ and Brandon Schroth.  The subject photographs were discovered by the Denver, Colorado FBI, upon the execution of a search warrant at the residence of one Jeffrey Mueller in Denver.

7.   The investigation unfolding in California was initiated after Mueller's wife, Robin Mueller, was interviewed and shown the above-described series of photographs.  Robin Mueller identified one adult male in the photographs as being her husband's friend, Brandon Schroth, who is in the United States Navy and stationed in San Diego, California.

8.   Denver FBI has advised your affiant that it seized a secreted and encrypted hard drive from Mueller's residence on August 12, 2011.  Although Denver FBI continues to be unable to unlock the encryption, it has been able to observe file and subfile

4

titles stored on the hard drive.  Denver FBI identified a subfile
entitled "Armcruz/XVids" along with six other subfiles with
individuals' names, to include, "Brandon". It appears to Denver FBI
that the seven subfolders all contain images and videos of
suspected sexual exploitation of children produced by the persons
whose names appear in the subfile titles.

9.    Denver FBI was able to forensically search a MacBook
laptop computer seized from Mueller's residence.  Forensic analysis
revealed that Mueller had viewed files on the MacBook from the
encrypted "Armcruz/XVids" subfolder entitled as follows: /volumes/
untitled/peps/armcruz/breannahxxxx.mov and breannahxxxx.jpg.   In
addition, there were also files viewed labeled armcruz/xvids and
another subfolder labeled arm/breannahxxxx.jpg and .mov.
Investigation by your affiant determined that Child 1 and Child 2
have a friend named Brianna, from Mercer, Pennsylvania.  Brianna's
father and Armando CRUZ have been described as best friends.

10.  Your affiant notes that Mueller has been federally
charged with producing images/videos of his sexual abuse of his
daughters, and posting such images on the Internet.  His trial is
scheduled for April 2012, in Denver, Colorado.  Mueller admitted to
sexually abusing his daughters at the time of the first search of
his residence and has been incarcerated since such time.

11. On December 6, 2011, Brandon Schroth was interviewed subsequent to a federal search warrant being executed at his residence in San Diego, California, by the San Diego FBI. During the interview of Schroth, Schroth admitted to being one of the males depicted in the series of photographs and identified the location at which the photographs were taken as the residence of Armando CRUZ in Mercer, Pennsylvania. Schroth identified CRUZ as the other adult male in the photographs. Schroth admitted that he met CRUZ in an online sex chat room, but denied that the room was for persons specifically interested in children. Schroth stated that the three girls depicted in the photographs are from the neighborhood where CRUZ lives.

12. Schroth further advised that the three young girls frequently visited CRUZ's 18-year-old daughter, and that he was aware that CRUZ also had a 17-year-old son. Schroth identified two of the minor females by their first names[1] and provided that he believed two of the three girls were sisters. Schroth eventually

---

[1] In accordance with Rule 49.1 of the Federal Rules of Criminal Procedure and to otherwise protect the identities of the three minor females, your affiant will hereinafter refer to the females as "Child 1", "Child 2", and "Child 3". As is reflected below in this Affidavit, your affiant has positively identified the three girls, and has confirmed that Schroth provided the FBI with Child 1's and Child 2's true and accurate first names, as well as accurately indicated that two of the three females are sisters.

admitted that he was the one who was pulling back the older (age 11), blonde girl's shirt (Child 2), exposing the girl's breasts while she slept.  He identified CRUZ as the person who took the photograph using his, Schroth's, camera.  Schroth further admitted he was sexually attracted to children and that is why he participated in the photograph exposing Child 2's breasts while she slept.  Schroth advised that after the digital photographs were taken of Child 2's exposed breasts, CRUZ copied the photographs from Schroth's camera's memory card and transferred those images to his, CRUZ's, computer. Schroth described his camera, which was used to take the photographs of the three girls, as a Cannon EOS Rebel TLI camera, Serial Number 1840702868.

13.  Schroth advised that he gave his camera to his friend, Mike Applying, from Kansas City, Kansas, during the beginning of December 2011. The San Diego FBI obtained text messages between Schroth and Applying from Schroth which, upon review, revealed inappropriate conversations between Schroth and Applying regarding children and sex.  It also appeared from the text message review that Applying had been in contact with CRUZ.  Applying has a nine-year-old daughter who similarly was discovered to have been text messaging, back and forth, with Schroth.

14.  San Diego FBI's investigation also resulted in a finding of a large number of text messages, during the period October 6,

7

2011, through November 18, 2011, back and forth, between Schroth and CRUZ. In those text messages, CRUZ and Schroth talked about Child 1, by name, and discussed whether CRUZ would have "company" when he, Schroth, was planning another trip to visit CRUZ.

15. The photographs depicting CRUZ, Schroth, and the three later identified minor, female children, were received by the Pittsburgh FBI from the San Diego FBI. A review of the photographs was conducted by your affiant.  Your affiant printed several individual photographs from the series, in which the girls are depicted fully clothed.  Your affiant contacted the Pennsylvania State Police in Mercer, Pennsylvania, for assistance in identifying the three minor females.

16.  On December 14, 2011, Pennsylvania State Police Trooper Eric Weller, Mercer Barracks, received the photographs from your affiant and examined them.  Trooper Weller works as a soccer coach at the Mercer County High School and is familiar with Mercer County school students and staff. Trooper Weller sat down with Ronald Rowe, Assistant Superintendent of Mercer County Schools and reviewed the Elementary School yearbook from the 2010 school year. Trooper Weller was able to positively identify all three females. The identification corroborated the names provided by Schroth. Child 2 and Child 3 were identified as sisters.  In December 2010, the estimated time frame during which the photographs were taken,

the girls were ages 10, 11, and 9, respectively.  The photographs depicted the girls in CRUZ's residence.

17.  Your affiant then arranged to have the three girls forensically interviewed by FBI Child Forensic Interviewers (CFI's) utilizing local child victim advocacy centers.  On December 28, 2011, Child 1, now 11-years-old, was interviewed by FBI CFI Katie Connell.

18.  Prior to the forensic interview, Child 1's parents were apprised of the situation and consented to the interview of their daughter.  Child 1's parents conveyed that Child 1 spent the night, on a number of occasions, at Armando CRUZ's residence throughout the Summer of 2010, with her cousins, Child 2 and Child 3.

19.  The forensic interview took place at the New Castle, Pennsylvania, Child Victim Advocacy Center located in the Jameson Hospital.  Your affiant was present for the interview and observed the entire interview, from a separate room.  During the interview, Child 1 identified herself in the photographs and her cousins, Child 2, and Child 2's younger sister, Child 3.  Child 1 also identified Brandon Schroth as "Tim", and CRUZ as "Armando".

20.  Child 1 advised that she spent one night at CRUZ's house because it was CRUZ's daughter's birthday.  She identified CRUZ's daughter as "Marissa".

9

21. Child 1 denied any sexual contact by either CRUZ or Schroth, also known as "Tim". Child 1 advised, however, that she recalled seeing a nude photograph of Child 3 on CRUZ's camera. Child 1 described the camera as being digital and black in color. Child 1 advised that sometimes Child 2 brought a camera with her to CRUZ's house and that it too was used to take pictures of the girls. She reported that CRUZ took Child 2's memory card out of her camera and downloaded all of the photographs from Child 2's camera onto CRUZ's camera.

22. Child 1 appeared to be nervous and became visibly upset when the subject of the nude photograph of Child 3 was discussed. Child 1 told the interviewer that Child 2 had told her "not to say anything" because if anyone found out they would not be allowed to go back to "Armando's house". Child 1 recalled that during the night she slept at CRUZ's, she was asleep in a top, bunk bed when she heard some clicking like a camera was going off and then felt someone touching her arm. Child 1 could not expand on that event and advised that that was all she remembered.

23. During the interview with CFI Connell, Child 1 further advised that when she was at CRUZ's house, she felt "sticky", so she went upstairs and took a bath. While she was taking her bath, she dropped her clothes which she had hung on a towel rack into the water and all of her clothes got wet. Child 1 advised she then got

10

out of the tub, put a towel around herself and called out for Child 2. Child 1 advised she ultimately went downstairs, wrapped in a towel, to get Child 2 to get her some clothes to wear.  According to Child 1, Child 2 brought her a bra and underpants and she, Child 1, redressed in only the bra and panties that Child 2 had given to her.  Child 1 then went back downstairs when she heard Armando and another man indentified as "Earl Warner" return with groceries to eat.  Child 1 recalled getting a glass of chocolate milk and sitting in the living room to watch television.  Child 1 stated that Marissa, CRUZ's 17-year-old daughter, took a picture of her wearing the bra and panties while she watched TV.  Child 1 became visibly upset and cried when asked who else was in the picture (CRUZ can be seen standing in the background of the photograph). Child 1 stated that she thought CRUZ "was a mannequin".  Child 1 further explained why she took a bath at CRUZ's house.  She said her mother had told her to take a bath because she gets infections "down there", and that she had not had a bath in two days.

24. Child 1 recalled spending several nights at Earl Warner's apartment, which is located near the high school in Mercer, Pennsylvania.  Child 1 and her cousin, Child 2, were friends with Earl's daughter.  Child 1 advised that while at Earl's house, Child 2 was there with her and that Child 2 was on the Internet using Facebook to talk to people.  Child 1 recalled an unknown man

11

messaging Child 2, telling Child 2 that he knew her.   Child 2 did not know him.   Child 1 advised that she then saw a video of Child 2 that the man sent to Child 2, depicting her nude.   Child 2 told Child 1 never to tell anyone.   Child 1 was unsure of where the video was taken of Child 2.

25.   Child 1 was shown several photographs, in which she identified Brandon Schroth's depiction as "Tim".   One photograph was that of Schroth ("Tim"), laying on the mattress in CRUZ's living room with Child 3 at Schroth's head, and Child 1 laying next to "Tim".   "Tim" had his hand laying on top of Child 1's breast. When asked about the content of the photograph, Child 1 explained that that had made her feel uncomfortable.

26. On January 6, 2012, Child 2, and her sister, Child 3, were forensically interviewed by Martha Finnegan, Child Forensic Interviewer (CFI) from FBI Headquarters.   Child 2's and Child 3's mother was contacted in Buffalo, New York, where she now resides with her daughters.   She agreed to have her daughters interviewed. Their mother advised that both of her daughters were familiar with this type of interview because both girls had been sexually assaulted by her ex-boyfriend and her ex-husband in the past.   The interviews were conducted at the Buffalo Child Victim Advocacy Center in downtown Buffalo, New York.   Buffalo FBI assisted with the interviews of Child 2 and Child 3.   In discussions with CFI

Finnegan, immediately after the interviews of both girls, it was learned that Child 3, the younger sister, did not disclose any sexual contact or having viewed images of herself, her sister, or of Child 1 while at CRUZ's house.   Child 3 was shown three photographs.   She identified Schroth in two of the photographs and identified CRUZ as having taken the photographs.   CFI Finnegan also interviewed Child 2, the "older", blonde girl in the series of photographs.   Child 2 disclosed she had viewed at least five (5) images of Child 1 completely nude, which were located on Armando CRUZ's computer.

27.   Child 2 advised that she had spent the night at CRUZ's house, and while at the house, she got on CRUZ's computer and noticed the photographs were displayed on the computer.   Child 2 advised she "X'd" out of them.   Child 2 further advised that the computer was located in the living room of CRUZ's house.   Child 2 denied any sexual contact with CRUZ.   Child 2 was shown several photographs of her in a gymnastics suit on a mattress with CRUZ. When shown the photograph, Child 2 stated that she did not remember the photograph being taken and then blamed the photograph on CRUZ having given her a "pill" in her water.   Child 2 stated that, at the time of the taking of the photographs, she was thirsty and had asked CRUZ for some water.   CRUZ brought her a glass of water that Child 2 described as "cloudy".   Child 2 further advised that after

she drank the water she felt funny and did not remember what happened thereafter.

28.   Child 2 recalled talking to Child 1 about the five (5) nude photographs of Child 1.   Child 1 told Child 2 that she felt the same thing had happened to her, that is, that CRUZ had given her a pill in water.   Child 2 stated that Child 1 could not remember how she woke-up, upstairs in CRUZ's house.

29.   Your affiant contacted Pennsylvania State Police laboratory chemist Brett Bailor and discussed what CRUZ could have put in the water of the child.   Bailor advised that the following three chemicals would cause, among other things, memory loss:

     a)   Flunitrazepam, commonly referred to as the "date rape drug", and/or "roofe";

     b)   GHB; and/or

     c)   Ketanine.

Bailor advised that any of the three, above-listed drugs would have similar effects on a young child.   Bailor reported that the drugs are made in the forms of powder, pill and liquid.

30.   Child 2 also recalled talking to Child 1 about Child 1 finding a nude picture of Child 2.   Child 2 was unsure whether the photograph of her, found by Child 1, was on CRUZ's computer or CRUZ's camera.   Child 2 also identified Schroth as "Tim".   Child 2 denied any sexual contact with "Tim".

31.   On February 4, 2012, your affiant interviewed Child 1 at
her home and in the presence of her parents.   Child 1 provided the
following information:

a.   That although she does not recall the exact number
of times, Child 1 spent many nights at Armando CRUZ's home.

b.   On one occasion, she could hear "slapping sounds"
between CRUZ or "Tim" and Child 2.   Child 2 later told Child 1 that
CRUZ had sex with her after she slapped "Tim" for trying to touch
her "private parts".

c.   On the occasion that she took a shower in CRUZ's
bathtub, CRUZ forced her to drink "dirty" water in which she could
see a "white thing floating in it."   CRUZ followed Child 1 around
the house repeatedly grabbing her from behind and trying to touch
her private areas.   Child 1 reported that CRUZ "crawled on top" of
her and tried to put a "pink thing" into her vaginal area.   Child
1 did not know/remember if he put the "pink thing" inside of her.
Child 1 reported that Child 2 told her that Armando CRUZ put the
"pink thing" inside of her.   Child 1 remembered CRUZ putting the
pink object on her skin and under her clothes and kicking him to
get him to stop.

d.   CRUZ used to call and text her on her cell phone.
One time, CRUZ called Child 1 and she could hear Child 2 crying and
"saying it hurt" in the background.   Child 1 told CRUZ to stop

hurting Child 2.  CRUZ told her that he would stop only if Child 1 came to his house.  Although she did not want to, Child 1 went to CRUZ's house after telling her mother that she was going to visit Child 2 at "Armando's".  During the visit, CRUZ tried to put the pink object in her vaginal area, but Child 1 would not let CRUZ and kicked him away.

        e.   CRUZ got angry and threw the pink object against the wall.  The pink object put a hole in the wall which CRUZ covered by sliding the dryer in front of the hole.  Child 2 told her that "they would do it" and he put the pink thing in her upstairs in the house.

        f.   Every time she went to CRUZ's house, he tried to touch her private areas.  Child 1 reported that she kept going to CRUZ's home because he told her that if she told anyone or did not return, he would "come get my mom and dad, and kill them and take them away."

        g.   Child 1 recalled that CRUZ purchased clothing and underwear for Child 2 and herself.  CRUZ told them they could only keep the clothing if they undressed and tried them on in front of him and "Tim".  Child 1 further stated that while Child 2 was undressed and nude, CRUZ and "Tim" took photographs of her.  She recalled later seeing those photographs on CRUZ's computer.

        h.   CRUZ did not allow Child 1 to use the computer, but

she and Child 2 would sneak in the middle of the night.  When using the computer, Child 1 and Child 2 observed "a lot" of pictures of many girls who were completely nude.  Child 1 described the girls depicted to be her age to approximately 13 or 14 years old.  Child 1 further recalled that she had seen approximately three (3) photographs of Child 2 nude and seven (7) of Child 3 with no clothes, on CRUZ's computer.

    i.  One night, Child 1 snuck into CRUZ's bedroom and deleted photos from the camera that CRUZ had used to take photographs of Child 1, Child 2, and Child 3, earlier in the evening.

    32.  Your affiant's experience in working these types of cases and in discussions with other agents and police officer's who work child pornography and child exploitation investigations, reveals that individuals who produce, distribute and/or possess child pornography, store such images on their computer, hard drives, external hard drives, external media devices, memory devices, CD's, DVD's, cameras, and other storage devices.  These individuals will often go to great lengths to hide and to store these images, taking steps such as classifying the photographs and grouping the photographs within the computer's hard drive.  Sometimes, these individuals will encrypt such files with encryption hardware and/or password protect the files containing child pornography, so as to

prevent access by others.

33. Your affiant's personal experience indicates that individuals who produce photographs of the sexual exploitation of children do not discard such photographs. Rather, the photographs are preserved for future viewing, either on the individual's computer, other computer hard drives, and/or on a digital camera or a digital camera's storage memory card.

34. Your affiant viewed the previously described photographs received from San Diego FBI, which depict the three (3) minor children inside subject Armando CRUZ's identified residence. Observable in several of the photographs is a desktop computer with a monitor. At least one of the girls is depicted sitting in front of the computer in CRUZ's house, viewing the monitor. Also observable in at least two photographs taken inside CRUZ's house is a digital camera.

35. A check of CRUZ's Pennsylvania Drivers License information confirmed that CRUZ currently resides at 420 North Pitt Street, Mercer, Pennsylvania 16137.

36. According to Title 18, United States Code, Sections 2251 and 2252, it is unlawful to produce, distribute, and/or possess images depicting the sexual exploitation of a minor.

18

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

37.   As with most digital technology, communications made from a computer are often saved or stored on that computer.  Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.  In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history.  Computer files or remnants of such files can be recovered by forensic examiners months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not

19

allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.   Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."   The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

38.   Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.   This is almost always true because of the following two reasons:

a.   Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information.

Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search.  This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish fully on-site.

      b.   Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.  The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files.  Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), a controlled environment is essential to its complete and accurate analysis.

39.  In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU").  In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been

used to create the data (whether stored on hard drives or on external media).

## CONCLUSION

40. Based on the aforementioned factual information, your affiant believes that it is reasonable and prudent that a search of the residence owned and occupied by Armando CRUZ, located at 420 North Pitt Street, Mercer, Pennsylvania 16137, be conducted, in order to obtain  physical evidence of the production, distribution, and/or possession of images depicting the sexual exploitation of children. Specifically, your affiant believes probable cause exists to search the premises for evidence, fruits, and instrumentalties of violations of Title 18, United States Code, Sections 2251 and 2252, to include the seizure and search of all computers, hard drives, external hard drives, external media software, CD's, DVD's, digital cameras, digital camera memory cards, and any storage device, electronic or not, which can be used to store images of child pornography. Accordingly, your affiant respectfully requests that a search warrant be issued authorizing your affiant to search for and seize the items listed on Attachment B, attached to this Affidavit and incorporated herein.

41. It is further respectfully requested that this Court issue an Order sealing, until further order of Court, all papers submitted in support of this Application, including the Application, Affidavit, and the Search Warrant, and the requisite inventory notice (with the exception of one copy of the warrant and

inventory notice that will be left at 420 North Pitt Street, Mercer, Pennsylvania 16137). Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation and premature disclosure of the contents of this Affidavit and related documents may have a negative impact on the continuing investigation and may jeopardize its effectiveness.

The above information is true and correct to the best of my knowledge, information, and belief.

THOMAS N. CARTER
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this _14th_ day of February, 2012.

CYNTHIA EDDY
United States Magistrate Judge

23

## ATTACHMENT A

## PROPERTY TO BE SEARCHED



420 North Pitt Street

## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

1.  Correspondence, including email correspondence, which pertains to children, to include, but not be limited to, photographs and videos transmitted to or by Armando CRUZ, Brandon Schroth, and/or Michael Applying, which depict children clothed and/or unclothed;

2.  Internet browsing history related to sex chat rooms;

3.  Any computer, computer system and related peripherals (in open view or secreted); commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, thumb drives, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals, designed to view or receive visual depictions of minors engaging in sexually explicit conduct;

4.  Still and video cameras (digital and non-digital), electronic storage devices for still and video cameras, and memory cards;

5.  Cellular telephones, and text messages which pertain to children generally and Child 1, Child 2, and Child 3 specifically.  Text messages to and/or from Brandon Schroth and/or Michael Applying;

6.  Envelopes, letters, notes, videos, photographs of minors, to include photographs of Child 1, Child 2, and Child 3, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

7.  Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades,

purchases, or transactions of any kind involving the transmission through interstate or foreign commerce, including by United States mail or by computer, of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

8.  Records evidencing occupancy of the residence located at 420 North Pitt Street, Mercer, Pennsylvania 16137, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence;

9.  Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes;

10. Any type of medications, in pill, powder, or liquid form, that can be used to disorient, hinder, or impede the memory or consciousness of a person, including, but not limited to, Flunitrazepam, commonly called "Roofe" or "date rape drug", and/or GHB, and/or Ketamine; and

11. Any and all vibrators or other sexual toys, to include one that is pink in color.

All of which are fruits, instrumentalities, and evidence of the commission of violations of Title 18, United States Code, Sections 2251(a), 2251(e), 2252(a)(2), and 2252(a)(4)(B).